O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ENODIS CORPORATION ) Case No.  CV 04-4357 CAS (PJWx)
)
Plaintiff, ) **FINDINGS OF FACT AND**
) **CONCLUSIONS OF LAW**
vs. )
)
)
CONTINENTAL CASUALTY )
COMPANY, ET AL. )
)
)
Defendant. )
_____ )
)
AND RELATED CROSS ACTIONS )
)
_____ )

This is an action brought by plaintiff Enodis Corporation, formerly known as the
Welbilt Corporation (referred to herein as "Enodis"), against defendants Continental
Casualty Company ("Continental") and Transportation Insurance Company
("Transportation") ("collectively, "CNA").  The action arises out of a dispute involving
five insurance policies issued by CNA to Enodis.

In this action, Enodis seeks reimbursement from CNA for $241,658.91 in fees
and expenses it incurred for its defense in <u>Pearce v. Welbilt</u> ("the <u>Pearce</u> action") in
addition to prejudgment interest.  CNA, through its asserted counterclaim against
Enodis, seeks $2.356 million in retrospective reimbursement and self-insured retention

("SIR") contribution under the policies in addition to $746,507.75 in attorneys' fees incurred in the instant action.

This action was tried to the Court.  Trial commenced and concluded on February 26, 2009.  George Stephan, John Lee, and Deana Ahn appeared for Enodis.  Hellar-Ann Hancock and Teresa Wainman appeared for CNA.  The Court, having considered the testimony and other evidence admitted at trial, the briefs of the parties, and the arguments of counsel, makes the following Findings of Fact and Conclusions of Law.

## I.

## FINDINGS OF FACT

### A.    The Transportation and Continental Policies

Between 1986 and 1991, Enodis entered into a series of insurance contracts with CNA to provide insurance coverage to Enodis pursuant to the following commercial general liability policies:

(a) Transportation general liability policy no. CCP001703987, effective April 30, 1986 to April 30, 1987 ("the 1986 Policy");

(b) Transportation general liability policy no. CCP00160 1805, effective April 30, 1987 to April 30, 1988 ("the 1987 Policy");

(c) Transportation general liability policy no. GL00 160968 1, effective April 30, 1988 to April 30, 1989 ("the 1988 Policy");

(d) Transportation general liability policy no. GL8007410957, effective April 30, 1989 to April 30, 1990 ("the 1989 Policy");

(e) Continental Casualty general liability policy no. GL007415736, effective April 30, 1991 to April 30, 1992 ("the 1991 Policy").

All of these policies have limits of $1 million per occurrence and in the aggregate. The 1986, 1987, 1988, 1989 policies contain an Automatic Premium Adjustment Rating Plan Endorsement and incorporate a Paid-Loss Plan.  The 1988 and 1989 policies each contain a $1,000 deductible.  The 1991 policy contains a "Deductible or Self-Insured Retention Endorsement" of $250,000 and incorporates

the Claims Service Agreement, contract No. 807415737, dated April 30, 1991.

**B.      Policy Provisions Regarding Tender**

The 1986 and 1987 policies contain the following provision regarding tender:

> 4.  Insured's Duties In the Event of Occurrence, Claim Or Suit
>
> (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
>
> (b) If the claim is made or suit is brought against the Insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

The 1988 and 1989 policies provide:

> F. Duties in the Event of Occurrence, Claim or Suit Condition
>
> This Condition now specifically requires that the Named Insured is responsible for notifying this company of an occurrence. It also requires that the named Insured is responsible to see that the company receives prompt written notice of any claim or suit.
>
> This is a procedural change from the current policy.

The 1991 policy provides:

> 2. Duties In The Event Of Occurrence, Claim Or Suit
>
> a. You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:
>
>> (1) How, when and where the 'occurrence' or offense took place;

(2) The name and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.

b. If a claim is made or 'suit' is brought against any insured, you must:

(1) Immediately record the specifics of the claim or 'suit' and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

**C.     Policy Provisions Regarding CNA's Authority to Settle Actions Under the Policies**

The 1986 and 1987 policies provide:

I. COVERAGE A - BODILY INJURY LIABILITY COVERAGE B - PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of

a. bodily injury or

b. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

4

The 1988 and 1989 policies provide:

> 1. Insuring Agreement.
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . .
>> (2) We may investigate and settle any claim or 'suit' at our discretion. . . .

The 1991 policy provides:

> 1. Insuring Agreement.
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result . . .

The Claim Service Agreement between Continental and Enodis, which is dated April 30, 1991 and is incorporated into the 1991 policy, states:

> The Client hereby grants CNA complete and sole authority and discretion to settle claims for an amount of $250,000 or less and to incur Allocated Claim Expenses without limitation unless otherwise provided in the Schedule.  However, CNA reserves the right to settle a claim in excess of its discretionary authority, if, in its sole opinion, failure to settle will subject CNA to fines, penalties or damages (including but not limited to punitive and exemplary damages) for unfair, improper or tortious claim handling acts, omissions or practices.

**D.      Policy Provisions Regarding Exhaustion of the Policies**

The 1986 and 1987 policies provide:

> This company will pay on behalf of the insured all sums which the

5

insured shall become legally obligated to pay as damages because of A. bodily injury; or B. property damage to which the insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suits against the insured seeking damages on account of such bodily injury or property damage, even if the allegations of the suits are groundless, false or fraudulent, and make such investigation and settlement of any claims or suit as it deems expedient, but the company shall not be obligated to pay any claims or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment or judgment or settlement.

The 1988, 1989, and 1991 policies provide:

1.  Insuring Agreement. a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend any 'suit' seeking those damages.  We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. But; . . . (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under coverages A or B or medical expenses under Coverage C.

**E.    Attorneys' Fees**

The Claims Service Agreement provides that "[i]f CNA files suit to collect any amounts due under this agreement, the client shall indemnify CNA for the reasonable costs and expenses and fees of pursuing the suit, including attorneys' fees unless the suit is terminated on its merits in favor of the client."

**F.    <u>Pearce</u> Action**

In or about 2000, Janice Pearce and others sued Enodis (then known as Welbilt) in the Superior Court of the State of California for the County of San Diego ("the <u>Pearce</u>

action") alleging that certain furnaces manufactured by Consolidated Industries Corp. ("Consolidated"), a former subsidiary of Enodis engaged in the design, manufacture, and sale of residential furnaces, were defective in their design and that Enodis was liable for the damages proximately caused by such defective furnaces as the alter ego of Consolidated.

Subsequently, Enodis faxed a letter on January 2, 2001 to, *inter alia*, Jeffrey A Doty ("Doty"), who had been engaged by CNA as coverage counsel in the <u>Salah</u> action. The letter stated "[o]n behalf of Enodis, we hereby demand indemnification from and defense of this action from each of your clients." In addition, the letter stated "[i]n the likely event that one or more of your clients will reserve one or more rights in respect of the claims asserted in this action, Enodis intends to engage our firm [the Bainton Firm] and the Los Angeles firm of Quinn Emanuel Urquart Oliver & Hedges, LLP to represent it in this action."

CNA did not respond to the letter and did not appoint or pay for defense counsel to represent Enodis in the <u>Peace</u> action. On April 9, 2001, however, Wausau sent a letter to Enodis accepting the defense under a reservation of rights. However, Enodis defended itself in the <u>Pearce</u> action by retaining the law firms of Seltzer Caplan McMahon Vitek ("Seltzer Caplan") and Quinn Emmanuel Urquart Oliver & Hedges, LLP ("Quinn Emmanuel"). Wausau did not appoint any defense counsel to defend Enodis in the <u>Pearce</u> action or assign its in-house counsel to defend Enodis, and did not ultimately pay for or reimburse the attorneys' fees paid by Enodis in the <u>Pearce</u> action. Enodis was dismissed from the <u>Pearce</u> action on jurisdictional grounds and Enodis did not make any settlement payments in the <u>Pearce</u> action.

Enodis incurred and paid attorneys' fees and expenses to the Bainton Firm, Quinn Emanuel, and Seltzer Caplan for its defense in the <u>Pearce</u> action from the inception of the action through dismissal, in the combined sum of $241,658.41.

### G.    <u>Salah</u> Action and Settlement

In 1994, Consolidated was sued by a class of plaintiffs for damages allegedly

caused by defective furnaces designed and manufactured by Consolidated ("the Salah action"). In addition to Consolidated, the Salah action named various vendors as defendants, including American Standard, Inc., doing business as The Trane Co. ("Trane"). The CNA policies, via endorsement, listed Consolidated as an additional insured.

Wausau defended Consolidated in the Salah action pursuant to Wausau policy no. 1523 00 086090 ("the Wausau policy"). The Wausau policy contains a "Reimbursement Endorsement," which requires Enodis to reimburse Wausau for all "reimbursable expenses" up to the "reimbursement limit" of $250,000. In addition, it requires Enodis to reimburse Wausau for all "unallocated loss adjustment expenses" although "they are not included in the Reimbursement Limit or the Total Reimbursement Obligation Limit." Reimbursable expenses are defined as "the sum of: 1. Damages and 2. Allocated claim expenses." Allocated claim expenses are "legal fees, costs and expenses, including fees of our staff attorneys defending 'suits' against you, and any other fees, costs or expenses which we incur or which any 'insured' incurs at our request for the investigation, adjustment or settlement and defense of claims or 'suits' . . . ." "Unallocated loss adjustment expense" is defined as "claim expenses other than 'allocated claim expenses' incurred by us when administering claims." Under the terms of the Wausau policy, Enodis eventually paid Wausau $299,824.19 in "reimbursable expenses" from the Salah claim.

Initially, Trane and Consolidated retained the law firm of Munger, Tolles & Olson ("Munger Tolles") to jointly defend them in the Salah action. In May 1998, Consolidated filed for bankruptcy. Thereafter, CNA agreed to defend Trane pursuant to the additional insured "vendors-broad form" endorsement in the defendants policies, subject to a reservation of rights.

On July 19, 1999, Enodis and CNA entered into a Release Agreement wherein Enodis paid CNA $375,000 for a release by CNA of any requests for reimbursement other than for fees and costs associated with the Salah action, which stated "[c]lient shall

remain liable for any amounts due under any of the Policies, claim service agreements or any other allegation that client may have for reimbursement or payment relating to or arising from the Salah claim . . ."

In September 2001, CNA and Wausau executed a settlement agreement in the Salah action on behalf of certain furnace distributors and Consolidated's bankruptcy trustee. CNA apportioned settlement among the policies with the following claim numbers:

> 1986-87 Policy CLM #2B020544 - $927,881
> 1987-88 Policy CLM # 2B020543 - $923,841
> 1988-89 Policy CLM # 2B02054 - $ 872,179
> 1989-90 Policy CLM # 2B020541 - $927,311

On May 23, 2003, CNA billed Enodis $782,806, which CNA stated was due under the policies as a result of the settlement of the Salah claim.  To the extent necessary, each of the foregoing findings of fact may be deemed to be conclusions of law.

## II.

## CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

2.    Venue is proper under 28 U.S.C. § 1391.

To the extent necessary, each of these conclusions of law may be deemed to be a finding of fact

### B.    Enodis' Claim Against CNA

#### 1.    Tender of Defense in the Pearce Action

In order to determine whether CNA may be held liable for attorneys' fees and expenses incurred by Enodis in defending the Pearce action, the Court must first

determine whether Enodis tendered the defense of the <u>Pearce</u> action to CNA.  Under California law, the insurer's "duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer."  Justice H. Walter Croskey & Justice Marcus M. Kaufman, California Practice Guide: Insurance Litigation 7:604 (The Rutter Group 2006) ("Croskey et al., Insurance Litigation") (citing <u>Montrose Chem. Corp. v. Sup. Ct.</u> (Canadian Universal Ins. Co.), 6 Cal. 4th 287, 295 (1993); <u>Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.</u>, 18 Cal. 4th at 886 (1998)).  A tender occurs when a "suit" is filed against the insured, and where the insured "provides some notice of the claim to the insurer in order to trigger its duty to defend the insured."  Croskey et al., Insurance Litigation at 7:607, 7:614 (citing <u>Truck Ins. Exch.</u>, 79 Cal. App. 4th at 979).  "Tender can be formal or constructive."  <u>Truck. Ins. Exch.</u>, 79 Cal. App. 4th at 979 n.16 (citing <u>Shell Oil Co. v. Nat'l Union Fire Ins. Co.</u>, 44 Cal. App. 4th 1633, 1640 (1996) (formal notice); <u>Cal. Shoppers, Inc. v. Royal Globe Ins. Co.</u>, 175 Cal. App. 3d 1, 37 (1985) (constructive); Croskey et al., Insurance Litigation, 7:614-7:616).  "[G]iven the appropriate circumstances, the law will charge a party with notice of all those facts which he might have ascertained had he diligently pursued the requisite inquiry."  <u>Cal. Shoppers, Inc.</u>, 175 Cal. App. 3d at 37.

CNA argues that it is not required to reimburse Enodis for expenses incurred in defending the <u>Pearce</u> action, because defense of the <u>Pearce</u> action was never tendered to CNA.  Specifically, CNA argues that the January 2, 2001 faxed letter from Enodis to Doty, who had been retained as coverage counsel on the <u>Salah</u> action by CNA, was insufficient to qualify as a tender of the <u>Pearce</u> action, because the letter was not transmitted directly to CNA and therefore violated the requirements of the policies.  The 1986 and 1987 policies requires that [i]n the event of an occurrence, written notice . . . shall be given by or for the insured *to the company or any of its  authorized agents* as soon as practicable." (emphasis added).  The 1988 and 1989 policies provide "the named Insured is responsible to see *that the company receives prompt written notice* of any claim or suit." (emphasis added). The 1991 policy states "[y]ou must see to it

that *we are notified* as soon as practicable of an 'occurrence' or an offense which may result in a claim." (emphasis added).

Although CNA is correct that the policies indicate that tender must be transmitted to CNA, the Court nevertheless determines that the transmission to Doty was sufficient to constitute a tender, given that Doty was likely acting as CNA's agent in his role as coverage counsel in the Salah action.  See, e.g., Tomerlin v. Canadian Indem. Co., 61 Cal. 2d 638, 644 (1964) (an attorney hired by an insurance company to defend an insured had both actual and ostensible authority to bind the company by his representations respecting coverage of the policy).  Given the similarity in subject matter, parties, and insurers involved in the Salah action and the Pearce action, it was not unreasonable for Enodis to assume that tendering the defense to CNA's retained coverage counsel was sufficient to constitute a tender to CNA.  It was also foreseeable to CNA that Enodis would assume that its communications with Doty regarding other actions related to the Salah action would be relayed to CNA.  Furthermore, the Court notes that although the letter from Enodis stated "[p]lease let me know at the earliest possible time if it will be necessary for us to correspond with any of your clients directly in order to notify them of the assertion of this claim and to demand indemnity and a defense[,]" it does not appear that Doty ever indicated to Enodis that direct communication with CNA was necessary, thereby further rendering reasonable Enodis' expectation that the letter constituted tender to CNA.  Therefore, the Court declines to find that Enodis did not properly tender the Pearce action to CNA.

### 2.    Voluntariness of Payments

CNA argues that, even assuming that Enodis properly tendered the defense of the Pearce action to CNA, CNA is nevertheless not liable for the attorneys' fees and expenses incurred by Enodis in the Pearce action, because Enodis' payments to the Bainton firm, Quinn Emanuel, and Seltzer Caplan were in fact "voluntary payments." The CNA policies each contain a "No Voluntary Payments" clause which provide that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any

obligation, or incur any expense except for first aid, without our consent." "California law enforces … no-voluntary-payments provisions in the absence of economic necessity, insurer breach, or other extraordinary circumstances. They are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense and settlement of the claim." <u>Low v. Golden Eagle Ins. Co.</u>, 110 Cal.App.4th 1532, 1546 (2003). In <u>Low</u>, the court held that a No Voluntary Payment "provision is enforceable posttender until the insurer wrongfully denies tender. [I]t is only when the insured has requested and *been denied a defense by the insurer* that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent and under the compulsion of that refusal undertake his own defense at the insurer's expense." <u>Id</u>. (emphasis in original).

The Court finds that the payments made by Enodis for its defense in the <u>Pearce</u> action were in fact voluntary payments, and therefore, that Enodis is not entitled to recover. The voluntary nature of the payments is evinced first by the fact that Enodis stated in its tender letter that it intended to "engage our firm [the Bainton Firm] and the Los Angeles firm of Quinn Emanuel Urquart Oliver & Hedges, LLP to defend the <u>Pearce</u> action[,]" indicating that Enodis had decided even before tendering the defense to hire these firms to defend it, and that it intended to incur these fees regardless of whether CNA ultimately accepted tender of the defense. Furthermore, it appears that one of Enodis' other insurers – Wausau – in fact accepted Enodis' tender of the <u>Pearce</u> action under a reservation of rights on April 9, 2001, but that Enodis did not seek to recoup its attorney' fees from Wausau after Wausau agreed to defend Enodis. Finally, in deposition, Bainton indicated that regardless of the results of the tender, Enodis intended to voluntarily retain these law firms, stating with regard to the <u>Pearce</u> action: "my recollection is that we received one or more Reservations of Rights and under any circumstance Welbilt was not going to be represented by a law firm who just heard about the alter ego dispute. I'll tell you that right now." <u>See</u> Bainton Dep. 11/30/05 417:23-418:4.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Therefore, because it appears that Enodis engaged the Bainton Firm, Quinn Emanuel, and Seltzer Caplan without receiving CNA's consent, its recovery of these attorneys' fees is barred by the No Voluntary Payment provisions.  Accordingly, the Court concludes that Enodis is not entitled to recover $241,658.91 in attorneys' fees and expenses it incurred for its defense in the <u>Pearce</u> action.

### C.    CNA's Counterclaim Against Enodis

In its counterclaim, CNA asserts claims for (1) unjust enrichment, (2) account stated, and (3) declaratory relief.

#### 1.    Unjust Enrichment

The elements for a claim of unjust enrichment are (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another.  <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723, 76 (2000) (citing <u>First Nationwide Savings v. Perry</u>, 11 Cal. App. 4th 1657, 1662-63 (2004)).  Under California law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.  <u>Paracor Fin., Inc. v. GE Capital Corp.</u>, 96 F.3d 1151, 1167 (9th Cir. 1996).  Therefore, because binding contracts (the insurance policies) define the rights of the parties in this action, and indeed are the basis for CNA's counterclaim, CNA's claim for unjust enrichment cannot lie.

#### 2.    Account Stated

"To have an account stated it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be owing."  <u>Truestone, Inc. v. Simi W. Indus. Park II</u>, 163 Cal. App. 3d 715, 725 (1984).  Thus, "[a]n account stated presupposes not only an acknowledgment or admission of a certain sum due on adjustment of accounts between the parties, but the striking of a balance, or an assent, express or implied, to the correctness of the balance."  <u>Oough v. Ansonia Oil Co.</u>, 99 Cal. App. 769, 773 (1929); <u>Generale Batiments Industriels v.</u>

Flexsol, 1990 U.S. App. LEXIS 21379 ("no account stated was established because final agreement was not reached on a total sum certain."); H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp., 99 Cal. App. 3d 711, 727 ("It is elementary law that a claim must be reduced to a definite amount by agreement between the parties before it can form a legitimate portion of an account stated"). The agreement between the debtor and creditor need not be express, but may be implied; therefore, "where the creditor renders the statement, and debtor fails to object within a reasonable time, the open account is superseded by the account stated." 1 Witkin, Summary of California Law, Contracts § 974; California Bean Growers' Ass'n v. Williams, 82 Cal. App. 434, 442 (1927). However, "where objection is made to the statement of the account, or the evidence fails to show acknowledgment of a definite and fixed sum, the implied assent is lacking and there is no account stated." 1 Witkin, Summary of California Law, Contracts § 974.

The only evidence of an account stated presented by CNA is a May 23, 2003 bill for $782,806 sent to Enodis from CNA. However, the submitted evidence also demonstrates that on May 29, 2003, Bainton responded to CNA, requesting that CNA provide Enodis with "copies of the underlying bills and invoices relating to the amount demanded" in part because in reviewing previous materials Enodis had "discovered what appeared to be significant payments made to a law firm retained by CNA that was representing a party adverse to Enodis in two cases" and in part because he was "not sure as to what circumstances have prompted CNA to seek reimbursement from Enodis." It appears that CNA followed up with a letter on June 12, 2003, stating that it would provide a response "shortly" and that the payment deadline would accordingly be extended. However, it does not appear that CNA provided a response until March 9, 2004, when it sent Bainton a letter describing the nature of the charges and also modifying its request to $784,525. Enodis responded on April 22, 2004, stating that it had "not yet completed" an analysis of the charges, and again raised concerns about money paid to Munger Tolles to "prosecute a lawsuit against Enodis." On May 19,

2004, the evidence shows that Bainton again requested additional "materials and breakdowns."  Given the continued objections and requests for clarification asserted by Enodis in response to the bill sent by CNA, the Court finds that the "evidence fails to show acknowledgment of a definite and fixed sum" and that "implied assent is lacking."[1] 1 Witkin, <u>Summary of California Law</u>, Contracts § 974.  Therefore, CNA has failed to set forth a claim for account stated.

### 3.   Declaratory Relief

Declaratory relief may be awarded under either the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201, or under the California Code of Civil Procedure § 1060.

The FDJA provides that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Under California Code of Civil Procedure § 1060:

> Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument

---

[1]CNA also argues that it produced a calculation of the amount allegedly owed by Enodis at the July 26, 2005 deposition of Dan Peterson.  However, this is not sufficient to support a claim of account stated, because there is no evidence of consent, implied or otherwise, to this amount by Enodis.

> or contract. He or she may ask for a declaration of rights or duties,
> either alone or with other relief; and the court may make a binding
> declaration of these rights or duties, whether or not further relief is
> or could be claimed at the time. The declaration may be either
> affirmative or negative in form and effect, and the declaration shall
> have the force of a final judgment.

Enodis argues that a declaratory relief action is inappropriate in this case, because "there is no ongoing or prospective conduct of Enodis and CNA requiring the Court's guidance. . . . Rather, this is a garden-variety dispute over a past contractual relationship under which CNA claims it is owed money." Enodis Post-Trial Br. at 2. Enodis argues that, therefore, CNA's claim should have been properly raised in a breach of contract claim.

In general, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" See Fed. R. Civ. P. 57; Judge William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 10:6.3 (The Rutter Group 2007). However, the FDJA "confers a discretion on the courts rather than an absolute right upon the litigant." Public Service Com. v. Wycoff Co., 344 U.S. 237 (1952). Courts have often exercised their discretion to dismiss a suit for declaratory relief that simply seeks to establish a party's right to damages due to breach of contract. Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan et al., 150 Cal. App. 4th 1487, 1497 (2007) ("[w]here . . . a party has a fully matured cause of action for money, the party must seek the remedy of damages and not pursue a declaratory relief claim."); Jackson v. Teachers Ins. Co., 30 Cal. App. 3d 341, 344 (1973) (finding no abuse of discretion where trial court denied declaratory relief, because plaintiff had fully matured cause of action for money damages and therefore "the need for declaratory relief in the superior court [was] questionable"). Furthermore, in general, "[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs . . . in short, the remedy is to be

used in the interests of preventive justice, to declare rights rather than execute them." County of San Diego v. State of California, 164 Cal. App. 4th 580, 607-08 (2008).

The Court finds CNA is not entitled to damages under its declaratory relief claim. CNA's declaratory relief claim essentially seeks to establish its rights to damages pursuant to a fully-matured claim for breach of contract, which the Court finds inappropriately suited for an action for declaratory relief.  See Canova, 150 Cal. App. 4th at 1497; Jackson, 30 Cal. App. 3d at 344.  Furthermore, the Court notes that on October 10, 2007, CNA filed a motion to amend its counterclaim to add a breach of contract claim to recover damages under the policies.  On November 19, 2007, the Court denied CNA's motion, finding that CNA had "unduly delay[ed] in pursuing its claim for breach of contract" and that "[a]llowing CNA to amend at this juncture could . . . unduly prejudice Enodis."  Although the subsequently-prepared pre-trial conference order could be construed to be a request for damages based on a declaration that money is due under the contract, the Court finds that granting such relief would be inconsistent with both the purpose of declaratory relief in general and with the Court's November 19, 2007 order denying CNA leave to amend to add a breach of contract claim.

## III.
## CONCLUSION

For the foregoing reasons, the Court finds that judgment should be entered in favor of CNA on Enodis' claim for relief.  Furthermore, the Court finds that judgment should be entered in favor of Enodis on CNA's counterclaim.

Dated: March 26, 2009

_Christine A. Snyde_
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE